Filed 6/6/25  In re J.A. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | B336732 c/w B341840 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS A. et al.,<br><br>    Defendants and Appellants. | (Los Angeles County Super. Ct. No. 22CCJP02479E) |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed in part, dismissed in part and reversed and remanded.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant Carlos A.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant Karla G.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## SUMMARY

Mother Karla G. and father Carlos A. appeal from the juvenile court's jurisdictional findings and dispositional orders regarding their child Jeremiah A.  Carlos C. also appeals from the juvenile court's order terminating jurisdiction.[1]

Karla G.'s appeal is moot because the order terminating jurisdiction gave her sole physical custody and joint legal custody of Jeremiah A.  Carlos A.'s appeal is moot as to the dispositional order removing Jeremiah A. from his custody because he did not challenge the later order granting sole physical custody to Karla G.  Carlos A.'s other claims, however, are not moot because the juvenile court's findings and orders continue to impact his rights as a parent and severely restrict his future contact with Jeremiah A.

Carlos A. challenges the sufficiency of the evidence supporting the juvenile court's findings that Jeremiah A. was at risk of harm due to his sexual abuse of two of Jeremiah A.'s older half-siblings and due to a traffic stop incident in which he was charged with possession of methamphetamine.  He also challenges the dispositional orders based on those findings, which restricted his contact with Jeremiah A. to monitored visitation

---

[1]     This court issued an order on March 5, 2025, consolidating Karla G. and Carlos A.'s appeals from the jurisdiction and disposition order, with Carlos A.'s appeal from the order terminating jurisdiction.

2

and required him to complete sex abuse counseling for perpetrators. He also contends that there was no basis for the juvenile court's issuance of a restraining order restricting his contact with Karla G.

We affirm in part, as to the jurisdictional finding that Jeremiah A. was at risk of harm due to the drug possession incident. We reverse in part and remand, because there was not substantial evidence of a risk to Jeremiah A. due to sexual abuse of the half-siblings, and there was not substantial evidence of any danger to Karla G. that would support the issuance of a restraining order.

FACTUAL BACKGROUND

## I.      Circumstances Prior to Filing of Dependency Petition Regarding Jeremiah A.

Karla G. has five minor children; Carlos A. is the father of her youngest child, Jeremiah A.

Karla G. first came into contact with the Los Angeles County Department of Children and Family Services (DCFS) in 2009 due to allegations of drug abuse by Karla G. and domestic violence by the father of Jeremiah A.'s half-siblings. This referral was investigated and closed as unfounded. DCFS investigated two more referrals in 2012 and filed a dependency petition in December 2012, alleging domestic violence by the half-siblings' father and Karla G.'s failure to protect the half-siblings from exposure to this violence. The juvenile court detained the half-siblings from their father and ordered in-home family maintenance services for Karla G. This case was closed in April 2014, with Karla G. and the half-siblings' father having joint custody of the children. After several more referrals concerning domestic violence, physical abuse and neglect, a second

3

dependency petition was filed in August 2014. Again, the half-siblings remained at home with Karla G. and she received family maintenance services. This case closed in June 2015 with Karla G. having sole legal and physical custody of the half-siblings.

In April 2022, another referral was made to DCFS. At that time, Karla G. and Carlos A. had been in a relationship for about three years. She was experiencing some mental health issues and had made a suicide attempt. When interviewed regarding this referral, Karla G. admitted she was feeling overwhelmed and depressed, but stated that Carlos A. was supportive and helpful to her and there was no domestic violence in their relationship. On June 28, 2022, the four half-siblings were detained from Karla G. and their father and placed with their adult sister Evelyn C.

In August 2022, a new referral was made to DCFS, alleging that Carlos A. had sexually abused two of the half-siblings, Ka. C. and Ke. C. DCFS investigated and closed the referral as inconclusive and found no current safety issue because the half-siblings had no ongoing contact with Carlos A.

On January 25, 2023, the juvenile court sustained the dependency petition regarding the four half-siblings, finding that they were at risk due to mother's mental health issues, drug abuse, neglect of the children's basic needs, and failure to protect the children from contact with Carlos A. in light of his drug use and a 1989 conviction for statutory rape.[2] The court removed the

---

[2]    This petition makes no reference to the allegation of sexual abuse of the half-siblings by Carlos A., only to his 1989 charge of unlawful sexual intercourse with a minor. Carlos A. was sentenced to 12 months' probation on this charge, and the conviction was set aside and dismissed in 1995.

4

half-siblings from Karla G. and from their father, ordered family reunification services, and ordered that the half-siblings have no contact with Carlos A.

Jeremiah A. was born in July 2023. DCFS did not, at that time, detain Jeremiah A. or amend its petition to include him.

On August 14, 2023, a forensic interview of half-siblings Ka. C. and Ke. C. was conducted. Ke. C. did not disclose any sexual abuse, but Ka. C., then age 13, disclosed that Carlos A. had touched her inappropriately on two occasions, over her clothing, once while massaging her leg after a sports injury, and once while playing "dog pile" with the children. At a review hearing in the half-siblings' case on September 14, 2023, the juvenile court ordered continuing family reunification services for Karla G., and again ordered that Carlos A. have no contact with the half-siblings.

On September 25, 2023, Karla G. tested positive for methamphetamine; she explained to DCFS social workers that she had relapsed due to the half-siblings' father's suicide. A new referral was made to DCFS on November 3, 2023, regarding Jeremiah A. Although he was healthy and well-cared for, and Karla G. was complying with her case plan, DCFS was concerned about Karla G.'s relapse, her ongoing relationship with Carlos A., and his presence in her home on weekends.

When interviewed by DCFS social workers regarding this referral, both Carlos A. and Karla G. adamantly denied that he had sexually abused the half-siblings. Mother stated that the half-siblings never disclosed any sexual abuse to her and had been manipulated by their caregiver Evelyn C. into making false allegations because Evelyn C. did not like Carlos A. Karla G. told the social worker that Carlos A. had an attorney and planned to

5

fight the case in court, and that "all her DCFS cases have been conspiracies."

DCFS was concerned about Karla G. not believing Ka. C.'s statements about sexual abuse, not being protective of the half-siblings, and generally being in denial about the problems that led to the dependency case. The social worker "explained to mother that . . . if your children report they've been hurt or abused and you now accuse them of lying, minimize their trauma, and then continue to be involved with their alleged abuser that is not being protective and that is why the [half-siblings] have not been returned." Karla G. responded that the half-siblings were not present when Carlos A. visited the home on the weekends.

During a follow-up interview on December 14, 2023, the social worker again told Karla G. that her relationship with Carlos A. was a barrier to reunifying with the half-siblings. Karla G. responded that Carlos A. does not live with her, she does not plan to stay in a relationship with him but does need financial support from him, and she "does not want to file a [Restraining Order] against the father but is open to the court doing it."

During his follow-up interview, Carlos A. again denied ever touching the half-siblings inappropriately. When asked about his prior conviction for statutory rape, he explained that he was 19 and his girlfriend was 17 at the time, and they later married and had three children together. When asked about a prior drug charge,[3] Carlos A. stated that he had borrowed a pair of shorts

---

[3]     Carlos A. was convicted of possessing a controlled substance on August 30, 2015, and sentenced to 34 days jail and 24 months' probation.

6

from a teammate after a soccer game, then got arrested for having an open container of beer, and when he was searched, methamphetamine was found in the pocket of the shorts.  He denied any current drug use and denied supplying drugs to Karla G.  He initially agreed to submit to a drug test, but when the social worker followed up on December 21, 2023, to schedule the drug test, he told the social worker to contact his attorney.

On January 30, 2024, a criminal case was filed, charging Carlos A. with three violations of Penal Code section 647.6, subdivision (a)(1).  On March 4, 2024, Carlos A. entered a not guilty plea, and the criminal court issued a protective order prohibiting Carlos A. from having any contact with Ka. C. or Ke. C.

## II.    Dependency Petition Regarding Jeremiah A.

DCFS filed a dependency petition under Welfare and Institutions Code section 300, as to Jeremiah A. on February 7, 2024.[4]  Counts b-1, b-3 and j-1 alleged that that Carlos A. had a history of drug abuse, was a current abuser of methamphetamine, and had prior convictions for unlawful sexual intercourse with a minor and rape,[5] and that Karla G. had endangered Jeremiah A. by failing to protect him from contact with Carlos C.  Counts b-2 and j-2 of the petition alleged that Karla G. had a history of drug abuse and was a current abuser of methamphetamine, and that her four other children were current

---

[4]     All further statutory references are to the Welfare and Institutions Code.

[5]     The language "and rape" apparently reflects a misreading of Carlos A.'s rap sheet.  His prior conviction in 1989 was for a single count of unlawful sexual intercourse with a minor.

7

dependents of the court due to her drug use. At an initial hearing on February 23, 2024, the court did not detain Jeremiah A. from Karla G. or Carlos A. but ordered that they submit to drug tests and continue to live separately.

On March 19, 2024, DCFS filed a first amended petition. This petition added into counts b-2 and j-2 the allegations that Karla G. had a positive test for amphetamines on September 25, 2023, and had numerous missed drug tests. The first amended petition added new counts b-4, d-1, and j-3, alleging that Carlos A. had sexually abused Ka. C. and Ke. C. and Karla G. had endangered Jeremiah A. by failing to protect him from contact with Carlos A. DCFS asked the court to detain Jeremiah A. from both parents due to Karla G.'s missed drug tests, failure to participate in a drug treatment program, and refusing to believe that any sex abuse occurred or that Carlos A.'s presence in her home presented any risk to Jeremiah A. The court denied DCFS's request to detain Jeremiah A. from either parent, and ordered that Carlos A. comply with any criminal protective order regarding the half-siblings.

On March 26, 2024, DCFS filed a second amended petition, adding a new count b-5 alleging that Carlos A. was cited for possession of methamphetamine during a traffic stop on February 14, 2024, and had "attempted to threaten" officers with a plastic replica gun, and that Jeremiah A. and Karla G. were present during this incident.

On March 27, 2024, Karla G.'s attorney filed a request for a restraining order pursuant to section 213.5 against Carlos A. The restraining order request named only Karla G. as a protected party, and did not include Jeremiah A. In the section of the form entitled "Describe Why You Need a Restraining Order," Karla

8

G.'s counsel stated: "Father was in possession of methamphetamine, threatened police officers . . . . On 02/14/24, the child, Jeremiah [A.'s] father, Carlos [A.], was arrested, during a traffic stop, booked and cited on Health and Safety 11337(a) for possession of methamphetamine. The father was stopped by Sheriff's Department due to false vehicle plates. The father attempted to threaten officers with a plastic replica firearm. Mother and child Jeremiah [A.] were present in the vehicle during the incident. . . . See DCFS Reports dated 03/26/2024 and related cases 22CCJP02479ABCD for more details."

The requested restraining order would require Carlos A. to have no contact with Karla G. except for brief and peaceful contact to communicate about court-ordered visitation, and to stay 100 yards away from Karla G., her home, workplace, vehicle, and place of worship.

At the initial hearing on the second amended petition on March 27, 2024, DCFS again requested that Jeremiah A. be detained from both parents. The juvenile court did not detain Jeremiah A. from Karla G., but did detain him from Carlos A. and ordered monitored visitation. In support of her request for a temporary restraining order, Karla G's counsel argued as follows at the March 27, 2024 hearing: "Mother is requesting a restraining order based off the February 14, 2024 incident. [¶] Mother, of course, regrets that [Carlos A.] was in possession of illicit substances during their coparenting time. [¶] And we are asking for this restraining order today, not just to ensure Jeremiah [A.]'s safety . . . but also to ensure that mother can be successful in maintaining her sobriety . . . ."

The court granted Karla G.'s request for a temporary restraining order, commenting that "[s]he has taken the steps of

9

actually demonstrating to the court that she is going to stay away from [Carlos A.] by getting a restraining order."

In preparation for the jurisdiction/disposition hearing, DCFS re-interviewed Karla G., Carlos A., and other family members, and prepared a Jurisdiction/Disposition report. In her interview, Karla G. stated that she would believe her daughter if she disclosed sexual abuse, but her daughter denied any sexual abuse both to Karla G. and to a social worker. Karla G. also stated that she had known Carlos A. for many years as a friend, and she and her children received "a lot of moral and emotional support from him" in dealing with the domestic violence perpetrated by the half-siblings' father.

Carlos A. declined to provide any statement regarding the allegations in the petition, referring the social workers to his attorney, but he did provide background information. He stated that he had known Karla G. for about six years, initially as a friend. He denied any drug use by himself or Karla G. and stated that she was a good mother. He stated that he had tried to have a good relationship with Karla G's family but it had been "difficult" and that family members had made "many false allegations." When asked about Carlos A.'s contact with Jeremiah A., both Carlos A. and Karla G. said that he did not come to her home on weekends anymore, but took Jeremiah A. to the home of one of his adult children, or to a park or other public place, and that he called every day to ask about Jeremiah A.

Evelyn C., when interviewed, stated that Ka. C. had disclosed sexual abuse to her, and that both mother and maternal grandparents believed that the sexual allegations were false and "this is all manipulation . . . because she [Evelyn] never had a good relationship with [Carlos A.]." Maternal grandmother,

10

when interviewed, stated that she had no concerns about Carlos A.; he was a family friend for many years who worked with maternal grandfather.

DCFS's Jurisdiction/Disposition report recommended that Jeremiah A. be removed from the custody of both parents. The report stated that Karla G. was only in "partial complian[ce]" with her case plan in the half-siblings' case, raised concerns about Karla G.'s missed drug tests and Carlos A.'s possible negative impact on her sobriety, and stated that Carlos A. "may have unaddressed substance abuse issues" and had refused to submit to any drug tests. Regarding the sexual abuse/failure to protect allegations, the report stated that criminal charges had been filed against Carlos A., but Karla G. still did not believe that he presented any risk to Jeremiah A., and that Karla G. and Carlos A. "have both expressed that they believe that the case . . . is based on a conspiracy and fabrications by social workers and [Evelyn]."

DCFS also filed two Last Minute Information for the court reports in preparation for the April 16 Jurisdiction/Disposition hearing. The first Last Minute report stated that Carlos A. had submitted to one drug test, which was negative. The report also stated that DCFS had decided to file a supplemental petition pursuant to section 342 in the half-siblings' case regarding the sexual abuse.[6] The second Last Minute report stated that Karla

___

[6] The record does not indicate that a section 342 petition was ever filed. The six-month review report in Jeremiah A.'s case, dated October 24, 2024, references the sustained petition in the half-siblings' case but does not indicate that any supplemental petition had been filed or adjudicated. Jurisdiction in the half-siblings' case was terminated on October 23, 2024.

11

G. recently had several negative drug tests, was in compliance with her case plan, and was aware of and willing to comply with the juvenile court's March 27 order detaining Jeremiah A. from Carlos A. and providing for monitored visitation.

Attached to the second Last Minute report was the police report from the February 14, 2024, traffic stop, which stated that Karla G. was in the driver's seat of the car and Carlos A. and Jeremiah A. were passengers. Carlos A. put a plastic replica gun down on the floor of the car when the officers told him to do so. He "spontaneously stated that he had drugs," and when he was searched, a plastic bag containing a substance resembling methamphetamine was found in his pants pocket. Carlos A. was cited and released for possession of methamphetamine. Karla G., when asked about the traffic stop by DCFS social workers, said that the gun was a water pistol and Carlos A. had pointed it out to the officers so they would not mistake it for a real gun. Mother also said that Carlos A. was wearing pants he recently bought from a donation center, and he had "found a bag of a possible substance in these pants."

## III.  Jurisdiction/Disposition Hearing

On April 16, 2024, after hearing argument from all parties' counsel, the juvenile court dismissed counts b-1, b-3, and j-1 of the second amended petition, finding that there was insufficient evidence of Carlos A.'s history of drug abuse or current drug abuse, or of Karla G. failing to protect Jeremiah A. from exposure to Carlos A.'s drug abuse. The court found that Carlos A.'s 1989 conviction for unlawful sexual intercourse with a minor was remote in time, and occurred when he was 19 and the minor was 17, so it did not present a risk of harm to Jeremiah A. The court dismissed count d-1, finding that Jeremiah A. was differently

12

situated from the half-siblings and so was not at risk of sexual abuse.

The juvenile court sustained count b-2, amending it to state that Karla G. was a "recent abuser" rather than a current abuser of methamphetamine, and to remove references to missed drug tests. The court sustained counts b-4 and j-3 as pled, and sustained count b-5 as amended to state that Carlos A. was "in possession" of a plastic gun rather than attempting to threaten officers with it.

The court's dispositional orders removed Jeremiah A. from Carlos A., and ordered family maintenance services for Karla G. and reunification services for Carlos A. Carlos A's case plan required him, among other things, to complete a drug/alcohol program, drug testing, individual counseling, and "sex abuse counseling for perpetrators." Carlos A. was ordered to comply with any criminal protective order or restraining order, and stay away from Karla G.'s home and the maternal grandparents' home. The juvenile court ordered monitored visits for Carlos A. with Jeremiah A. and specified that Karla G. was not to monitor or be present during these visits.

As to the restraining order, Carlos A.'s counsel argued that it should not be granted because there was no evidence of domestic violence between Carlos A. and Karla G., the restraining order request was based solely on the February 14, 2024 traffic stop incident, and the police report did not indicate that Carlos A. threatened or presented any danger to the police or Karla G. during that incident. Karla G.'s counsel responded that "[w]hile it's true that there was no domestic violence between these two parties, [Carlos A.] did still put mother in a detrimental and dangerous position by having methamphetamine

13

with mother without mother's knowledge in his vehicle where baby Jeremiah [A.] was also present . . . ."

The court questioned whether a stay-away order would be sufficient, asking counsel "[s]o is she in fear of father?" Karla G. herself responded to this question, saying "No, I'm not fear [*sic*] of father." Karla G.'s counsel then reiterated her request for a restraining order and declined the court's suggestion to either consult with her client in private or allow the court to inquire directly as to Karla G.'s wishes.

The court found "that a sufficient showing has been made" to grant the restraining order. The terms of the restraining order were the same as those of the temporary restraining order, and it would remain in effect until April 16, 2027.

Both parents filed timely appeals from the juvenile court's jurisdictional findings and dispositional orders.

## IV. Six-month Review Hearing and Termination of Jurisdiction

On October 24, 2024, the juvenile court held a six-month review hearing. DCFS's report for this hearing stated that Jeremiah A. was healthy and well-cared for by Karla C., and she was in full compliance with her case plan. Carlos A., when interviewed by DCFS for the review hearing, again denied any sexual abuse but stated he would comply with court orders so as not to place Jeremiah A. at risk of being removed from Karla G. Carlos A. had provided numerous negative drug tests but had not complied with the case plan requirements of a drug program and sex abuse counseling for perpetrators, because he continued to deny any drug use or sexual abuse. He had not contacted the DCFS social worker about scheduling monitored visits with Jeremiah A.

14

Prior to the October 24, 2024 review hearing, Carlos A. had entered a plea to a lesser, non sex-offense charge of violating Penal Code section 236 in the criminal case regarding the half-siblings, and was sentenced to 36 months' probation, 20 days of community service and a 52-week parenting program, and ordered to stay away from Ka. C.  He told the DCFS social worker that he intended to comply with the criminal court's orders.

DCFS recommended closing the case with sole legal and physical custody to Karla G. and monitored visits for Carlos A.  Father's counsel requested unmonitored visits on the grounds that Carlos A. had been "consistently testing negative" since April 2024.  DCFS's counsel opposed this request, pointing out that Carlos A. had not completed a drug program or sex abuse counseling for perpetrators, as required by the case plan, and that Carlos A.'s visits with Jeremiah A. had been "sporadic."  The juvenile court terminated jurisdiction, effective October 31, 2024, with an order granting joint legal custody, sole physical custody to Karla G., and monitored visitation to Carlos A.

The court further ordered that both parents must comply with the restraining order, Carlos A. was to stay away from the family home, and Karla G. could not monitor his visits.  Attached to the custody order was a form JV-206, stating that the reason that Carlos A. was restricted to monitored visitation was that he had not completed, among other things, "sexual abuse treatment . . . for offenders."

Carlos A. filed a timely notice of appeal.

## DISCUSSION

### I. Mootness

Respondent argues that both parents' appeals should be dismissed as moot because the juvenile court terminated jurisdiction over Jeremiah A. on October 24, 2024. Our first task as a reviewing court is to " 'decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot. . . .' " (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)

Karla G.'s appeal is moot. Jeremiah A. was never removed from her custody during the dependency case, and the juvenile court's order of October 24, 2024 provided her with joint legal and sole physical custody of Jeremiah A. She did not appeal from this order. Even if this court were to agree with Karla G.'s challenge to the juvenile court's jurisdictional findings, subsequent events have rendered it impossible to grant her any effective relief, because she is suffering no ongoing harm from the juvenile court's findings and orders. (*D.P., supra*, 14 Cal.5th at p. 276.)

Karla G. argues that this court should exercise its discretion to reach the merits of her appeal even if it is moot. We decline to do so. The factors discussed in *In re D.P.* as weighing in favor of discretionary review are not present in this case. The sustained allegations in Jeremiah A.'s case regarding Karla G. are not "particularly pernicious or stigmatizing," and they are unlikely to cause any prejudicial impact in future dependency or family court proceedings or other collateral consequences. (*D.P., supra*, 14 Cal.5th at pp. 285-286.)

Carlos A. is differently situated. Some, but not all, of the issues he seeks to raise on appeal are moot. Carlos A. seeks to challenge the dispositional order removing Jeremiah A. from his

16

custody, arguing that the evidence in this case did not meet the clear and convincing evidence standard for removal as required by section 361, subdivision (d). This issue is moot. At the October 24, 2024 review hearing, DCFS's counsel requested that the court close the case with sole physical custody to Karla G., joint legal custody, and monitored visitation for Carlos A. Carlos A.'s counsel stated that "father is in agreement with joint legal custody; however, he is requesting unmonitored visits. Since Carlos A. did not contest DCFS's request to grant sole physical custody to Karla G. at the October 24, 2024 hearing, his challenge to the removal order is moot, because it was superseded by the exit order granting sole physical custody to Karla G. Carlos A. does not seek to challenge this provision of the exit order on appeal.

Carlos A.'s other challenges to the juvenile court's jurisdictional findings and dispositional orders are not moot. When a juvenile court's findings and orders form the basis for "an order that continues to impact a parent's rights – for instance, by restricting visitation or custody – that jurisdictional finding remains subject to challenge, even if the juvenile court has terminated its jurisdiction." (*D.P., supra*, 14 Cal.5th at p. 276.) The Supreme Court cited as examples of cases where termination of jurisdiction does not render a parent's appeal moot, a case with "a stayaway order that remained in effect" after termination of jurisdiction, and a case in which a father's contact with the child was " 'severely restricted as a direct result of the jurisdictional and dispositional findings and orders.' " (*Id*. at pp. 276-277.)

17

Although Carlos A.'s counsel did not contest the award of physical custody to Karla G. at the October 24, 2024 hearing, he did argue for unmonitored visitation. The juvenile court rejected that argument, and not only restricted his contact with Jeremiah A. to monitored visits but also ordered that Karla G. could not monitor or be present during Carlos A.'s visits, and visits could not occur at Karla G.'s home. The court also ordered Carlos A. to stay away from the maternal grandparents' home, precluding another possible location for visits. These orders created severe logistical barriers to future contact with his child. Moreover, if Carlos A. were to seek to modify the visitation order, the family court would be notified via the JV-206 form that the restriction to monitored visits was based in part on his failure to complete "sex abuse counseling for perpetrators."

Carlos A. also opposed the issuance of the restraining order, which remains in effect until April 16, 2027, and which could subject him to criminal prosecution if he were to have any contact with Karla G. other than visitation exchanges and brief communications about visitation, or come within 100 yards of Karla G., her home, her workplace, or her vehicle, etc.

Carlos A. continues to suffer prejudicial consequences from the juvenile court's jurisdictional findings and the dispositional orders based on these findings, from the issuance of the restraining order, and from the terms of the custody order terminating jurisdiction, so we will consider the non-moot issues on their merits.

## II. Jurisdiction Under Section 300, Subdivisions (b) and (j)

Carlos A. contends that the juvenile court erred in sustaining counts b-4, b-5 and j-3 of the second amended petition. In reviewing a challenge to jurisdictional findings, we determine if " 'substantial evidence, contradicted or uncontradicted, supports them' " and " ' "draw all reasonable inferences from the evidence to support the findings and orders of the dependency court . . . and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).) We conclude that while count b-5 is supported by substantial evidence, counts b-4 and j-3 are not.

### A. Count b-5: the traffic stop incident.

Count b-5 alleged, in relevant part, that Carlos A.'s possession of methamphetamine during the February 14, 2024 traffic stop interfered with his ability to provide regular care and supervision of Jeremiah A., endangered Jeremiah A.'s physical health and safety, and placed him at risk of serious physical harm. Carlos A.'s counsel argued at the jurisdictional hearing that Jeremiah A. was not endangered during the traffic stop because Carlos A. "fully complied" with the police and was "cited and released . . . without incident." Regarding the drug possession, counsel stated that "[t]he pants the father was wearing were donated, and it was in those donated pants that father found the crystalline substances. Father wanted to make the police aware of the substance, which is why he volunteered that information." Counsel further argued that the plastic bag was not within reach of Jeremiah A., and there was no evidence that Carlos A. was under the influence of methamphetamine at

19

that time or any other time, so there was no nexus between Carlos A.'s drug possession and a risk of harm to Jeremiah A.

The court sustained this count, amending it to state that Carlos A. had possessed a plastic replica gun, not threatened the officers with it. The court commented that "this is a situation where it could have escalated – fortunately, it didn't – when father was pulled over for a traffic stop and then found in possession of methamphetamine, and then was found with a replica toy gun in his hand, which could have been mistaken for a real gun . . ."

The juvenile court in this case had found that there was insufficient evidence of drug *abuse* by Carlos A. to sustain the b-3 count. The question before us is whether Carlos A.'s *possession* of methamphetamine, together with all the other evidence, is sufficient to support a finding that Jeremiah A. was at risk of harm. The relevant language of section 300, subdivision (b) requires the court to find that a child "has suffered, or there is substantial risk that the child will suffer, serious physical harm . . . as a result of . . . [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child."

Although this is not a case where jurisdiction rests on parental drug abuse, the Supreme Court's analysis of section 300, subdivision (b) in *In re N.R.* (2023) 15 Cal.5th 520 (*N.R.*), is still instructive. That case rejects the "tender years" doctrine and holds that a parent's drug abuse does not create a presumption of risk to a young child. (*Id.* at pp. 556-560.) Instead, dependency jurisdiction under section 300, subdivision (b) "must be established on the facts of each case." (*N.R.*, at p. 559.) The *N.R.* court also stated, however, that it is "reasonable for courts to infer that very young children require a substantial degree of

20

close supervision." (*Id*. at p. 558.)  Similarly, although Carlos A.'s possession of drugs does not give rise to a presumption of risk, the juvenile court could still infer that it presented more danger to Jeremiah A. than to an older child.

The juvenile court in this case could reasonably have concluded that Jeremiah A. was at risk of serious physical harm due to Carlos A.'s failure or inability to adequately supervise or protect him.  The court focused on the February 14, 2024 traffic stop incident in explaining the basis for sustaining the b-5 count.  While it is true that possessing methamphetamine in a car with a baby could endanger the child in a number of ways – ranging from the baby accidentally ingesting the substance, to a parent using it and driving under the influence, to the risks inherent in encounters with law enforcement – this incident alone might not have been sufficient to support dependency jurisdiction.  But the juvenile court also had other evidence before it, including: Jeremiah A.'s young age (nine months at the time of the hearing); Carlos A.'s 2015 conviction for possession of methamphetamine, for which he offered a strikingly similar and implausible explanation; his refusal to submit to any drug tests until shortly before the jurisdictional hearing; his denial of any problem with drug abuse; and his insistence, along with Karla G., that the dependency case was not based on any legitimate concerns and was a "conspiracy."  Also, Karla G., who was Jeremiah A.'s primary caregiver, had been struggling with substance abuse for

21

many years, and the social workers had expressed concerns about Carlos A.'s potential negative influence on her sobriety.

In light of the totality of the evidence and the deferential standard of review applicable in this case, we cannot say that the juvenile court erred in sustaining the b-5 count.

### B. Counts b-4 and j-3: sexual abuse of half-siblings

Counts b-4 and j-3 alleged that Carlos C. sexually molested Ka. C. and Ke. C. by touching them inappropriately on their genital area and breast, over their clothing, and that this sexual molestation endangered Jeremiah A.'s "physical and emotional health, safety and well-being" and placed him "at risk of physical and emotional harm, damage, danger, and sexual abuse." Carlos A.'s counsel argued at the dispositional hearing that the sex abuse allegations were not supported by the evidence, and even if they were, Jeremiah A. was differently situated from the half-siblings in that he was a male infant and was Carlos A.'s biological child, so there was no evidence of risk to Jeremiah A. Counsel also pointed out that the mere fact that a criminal case was filed is not proof that sexual abuse occurred.

The court dismissed count d-1, because Jeremiah A. was "differently situated" and so was not at risk of sexual abuse, but sustained counts b-4 and j-3, stating that "mother and father have not – still are minimizing father's sexual abuse against the older other children, where he has – I believe a criminal case that is pending and they need to acknowledge the risk and address those issues."

Although the juvenile court does not explain the basis for sustaining these counts in detail, the court apparently found that the sexual abuse did occur. It is not the role of this court to reweigh the evidence on this point. The juvenile court could have

22

found Ka. C.'s statements during the forensic interview and Evelyn's statement that Ka. C. had disclosed sexual abuse to her more credible than Carlos A.'s, Karla G.'s, and the maternal grandmother's denials that any sexual abuse occurred.

But in order to sustain the b-4 and j-3 counts, the juvenile court also had to find a risk of harm to Jeremiah A. Neither DCFS nor the court ever articulated exactly what this risk was. Karla G., when confronted by the DCFS social worker, pointed out that her daughters were not present when Carlos A. visited her home, and Carlos A. had no ongoing contact with them. During each of the social workers' visits to Karla G.'s home, Jeremiah A. was reported to be healthy, well cared for, and bonded to Karla G. There is no evidence that Carlos A. abused or neglected Jeremiah A. in any way, either when he was visiting Karla G.'s home on weekends or later, when his visits with Jeremiah A. took place at the homes of one of his adult children or in a park or other public place. There is also no evidence that Carlos A. failed to comply with the criminal protective order requiring him to stay away from Ka. C. and Ke. C.

The Supreme Court in *I.J., supra,* 56 Cal.4th 766, clarified that a child may be found at risk of harm within the meaning of sections 300, subdivisions (b) and (j) due to the sexual abuse of a sibling, even if the child is not specifically at risk of sexual abuse – but that sexual abuse of a sibling is not *always* sufficient to sustain a (b) or (j) count. (*I.J.,* at pp. 776-777.) The *I.J.* court provided guidance as to the factors juvenile courts should consider in determining whether a child is at risk of harm due to sexual abuse of a sibling. None of those factors is present in this case. Jeremiah A. is differently situated from Carlos' 13- and 11-year-old stepdaughters in that he is a male infant and is Carlos

A.'s biological child. There is no evidence that Carlos A. had any propensity to abuse very young or male children. Also, unlike the children in *I.J.*, Jeremiah A. never lived in the same home with Ka. C. or Ke. C. (and was not yet born in 2022, at the time of the reported incidents), so there is no possibility that he could have witnessed, been present, or learned of any incident of sexual abuse. (*Id*. at p. 778.) Moreover, the conduct described in Ka. C.'s and Evelyn C.'s statements –inappropriate touching over Ka. C.'s clothing – was not "serious and prolonged" or " 'aberrant in the extreme' " as was the sexual abuse in *I.J* and similar cases. (*Id.* at p. 778; *see In re S.R.* (2024) 104 Cal.App.5th 44, 55-56 [jurisdictional findings that child was at risk due to sexual abuse of sibling not supported by substantial evidence due to differences in age, gender and circumstances].)

Counts b-4 and j-3 were not supported by substantial evidence. Although jurisdiction was still proper on other grounds, sustaining these counts was not harmless error because it affected the court's dispositional orders.

## III. Dispositional Orders

Carlos A.'s counsel stated at the dispositional hearing that Carlos A. was willing to do a drug program and weekly testing but objected to being ordered to do sex abuse counseling since he denied any sex abuse. The juvenile court ordered Carlos A. to complete, in addition to a drug program with testing and several other requirements, "sexual abuse [counseling] for perpetrators," and to have monitored visitation in a neutral setting with a DCFS approved monitor, Karla G. not to monitor or be present at Carlos A.'s visits. Having found that the b-4 and j-3 counts of the petition were not supported by substantial evidence and should

24

not have been sustained, we must consider the impact of this holding on the dispositional orders challenged on appeal.

The juvenile court may, at disposition, make "all reasonable orders for the care, supervision, custody, conduct, maintenance and support of the child." (§ 362, subd. (a).) This may include making orders to address problems that are not described in the sustained petition. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) The court has "wide latitude in making orders for the well-being of the child," so long as they are "reasonably necessary to eliminate the conditions that led to the dependency." (*Ibid.*) Similarly, when terminating jurisdiction, the court "may reasonably determine that continued supervision of the minor as a dependent child is not necessary for the child's protection, and at the same time conclude that conditions on visitation are necessary to minimize . . . the danger that visits might subject the minor to the same risk . . . that previously led to the dependency adjudication." (*In re Chantal S.* (1996) 13 Cal.4th 196, 204.)

So, our conclusion that the juvenile court should not have sustained the b-4 and j-3 counts does not necessarily mean that it could not make dispositional orders addressing the issue of sexual abuse. The question is whether these dispositional orders were "reasonably necessary" to protect Jeremiah A. and ensure his well-being.

The order requiring Carlos A. to complete "sex abuse counseling for perpetrators" is not reasonably necessary to ensure Jeremiah A.'s safety and well-being. As discussed *supra*, neither DCFS nor the juvenile court ever articulated any specific risk to Jeremiah A. presented by the 2022 incidents of sexual abuse of the half-siblings, and the evidence does not support a finding that

25

there was any such risk. Even in light of the "wide latitude" that juvenile courts have in making dispositional orders, this portion of the court's dispositional orders is not supported by any substantial evidence of a risk to Jeremiah A. and was an abuse of discretion.

The order restricting Carlos A. to monitored visitation, however, was not a clear abuse of discretion. Given the court's jurisdictional findings regarding Carlos A.'s possession of methamphetamine; the fact that Carlos A. had never been Jeremiah A.'s primary caregiver and had, at most, a few hours of parenting time each week throughout Jeremiah A.'s life; and Carlos A.'s failure to contact the social worker to schedule visits, the juvenile court could have reasonably concluded that monitored visitation was necessary to protect Jeremiah A.'s safety and well-being even apart from any consideration of risks related to sexual abuse. It is unclear, however, whether the juvenile court would have granted Carlos A.'s request for unmonitored visitation at the October 24, 2024 hearing – by which time he had numerous clean drug tests – in the absence of the jurisdictional findings and dispositional orders regarding sexual abuse. The issue of Carlos A.'s visitation must be remanded to the dependency court.

## IV. The Restraining Order

Carlos A.'s counsel argued at the dispositional hearing that there was no basis for issuance of a restraining order because there was no domestic violence between Carlos A. and Karla G., the restraining order request was based solely on the February 14, 2024 traffic stop incident, and there was no showing that Carlos A. threatened or harmed anyone during this incident, so "father does not present a danger to mother." The juvenile court

26

found "that a sufficient showing has been made" to grant the restraining order, because Karla G. "feels that father put her in a detrimental situation and was blindsided by this, and this could have escalated and turned into something far more serious, placing both herself and the child at risk."

Carlos A. argues on appeal that the juvenile court abused its discretion in granting the restraining order. Respondent's brief does not address this issue, since DCFS did not request the restraining order. Co-appellant Karla G. initially took no position regarding the restraining order, but later filed a brief arguing that issuance of the restraining order was supported by substantial evidence and it was "not unreasonable" for the trial court to conclude that the restraining order was "necessary to prevent [Carlos A.] from contacting [Karla G.] or otherwise disturbing her."

Section 213.5, subdivision (a) provides that a juvenile court may issue an order enjoining any person from "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning . . . destroying the personal property, contacting, either directly or indirectly . . . coming within a specified distance of, or disturbing the peace of any parent . . . ." A dependency court's issuance of a restraining order is subject only to review for abuse of discretion, and we are to " 'view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.' " (*In re Bruno M.* (2018) 28 Cal.App.5th 990, 996-997.) Moreover, the burden of proof for the party seeking a restraining order is not high. Evidence that

27

the restrained person has previously stalked, attacked, or harmed the protected person is " 'certainly sufficient,' " but is not required, nor is "evidence of a reasonable apprehension of future physical abuse. [Citation.] There need only be evidence that the restrained person 'disturbed the peace' of the protected [person]." (*Id*. at p. 997.) Disturbing the peace, in this context, refers to " ' "conduct that destroys the mental or emotional calm of the other party." ' " (*Ibid.*)

Despite the low burden of proof and the deferential standard of review, there must be *some* evidentiary basis for the issuance of a restraining order. (*In re C.Q.* (2013) 219 Cal.App.4th 355, 365 [juvenile court's issuance of a restraining order is not proper unless failure to issue the order might jeopardize the safety of the protected person].) Here, there is simply no evidence that a restraining order against Carlos A. was needed to protect Karla G. from any harm or danger. Throughout the case, Karla G. stated that there was no domestic violence of any kind between herself and Carlos A. and described him as a supportive co-parent. When the court inquired whether Karla G. was in fear of Carlos A., she spoke up (apparently against the advice of counsel) to say that she was not. Nor was there any evidence that Carlos A. ever came to Karla G.'s home or otherwise contacted her without her consent, or that he failed to comply with the juvenile court's February 23, 2024 order that he and Karla G. were to live separately, or with the March 27, 2024 orders restricting him to monitored visits and requiring him to stay away from Karla G.'s home. On the contrary, after the March 27, 2024 order was issued, both Karla G. and Carlos A. stated that he no longer came to her home, but visited with Jeremiah A. at an adult sibling's home or in a public place.

The only basis for a restraining order provided by Karla G.'s counsel or referenced by the court was the February 14, 2024 traffic stop incident. That incident, while certainly problematic in other ways, did not involve any behavior by Carlos A. that would support the issuance of a restraining order protecting Karla G. He did not coerce her into his car or drive in an unsafe manner; on the contrary, the police report states that she was driving. He did not exhibit any aggressive or threatening behavior towards Karla G. or towards the police during the stop.

DCFS, and the court, may have had legitimate reasons to want Karla G. to end her relationship with Carlos A. DCFS was concerned that Carlos A. would jeopardize Karla G.'s fragile sobriety and reduce her chances of reunifying with her other children. The social workers, the court, and Karla G.'s own counsel apparently regarded getting a restraining order – whether she needed or wanted one or not – as a requirement for Karla G. to prove that she was a responsible and protective parent. This is a misuse of section 213.5. It would be a tragic irony if restraining orders, which are intended to empower victims of family violence, were to become merely an arbitrary task that a parent in a dependency case must complete in order to keep or regain custody of her children. The juvenile court's issuance of the restraining order after hearing was an abuse of discretion and is reversed.

## DISPOSITION

The matter is remanded to the juvenile court with instructions to vacate the jurisdictional findings as to counts b-4 and j-3 of the second amended petition, and the portions of the April 16, 2024 dispositional orders and October 31, 2024 juvenile custody orders that require Carlos A. to complete sex abuse

29

counseling for perpetrators; to amend the corresponding provisions of the JV-206 form dated October 31, 2024; and to vacate the restraining order issued on April 16, 2024.

On remand, the juvenile court is to consider whether the provisions of the October 31, 2024 juvenile custody order requiring that Carlos A.'s visits with Jeremiah A. be monitored, that Karla G. cannot monitor or be present during his visits, and that Carlos A. is to stay away from the maternal grandparents' home, are still reasonably necessary to protect Jeremiah A. from any risk of harm, in light of this court's decision.

Karla G.'s appeal is dismissed as moot.

In all other respects, the juvenile court's findings and orders are affirmed.



                                MATTHEWS, J.*

We Concur:



            STRATTON, P. J.



            WILEY, J.

_____

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.